[Civ. No. 5467.    Fourth Dist.    July 16, 1957.]

LAWRENCE J. MONDOT et al., Appellants, v. VALLEJO
    GENERAL HOSPITAL et al., Defendants; F. BURTON
    JONES, Respondent.

Melvin M. Belli, Augustine, Bryans & Ragen and George Bryans for Appellants.

John W. Holler and Cranston L. Hopkins for Respondent.

MUSSELL, J.—This is an action for damages alleged to have been caused by the negligence of defendant F. Burton Jones, a physician and surgeon, in that on or about the 5th day of April, 1937, in the course of an operation upon plaintiff Mary Mondot and after opening plaintiff's abdominal cavity, said defendant "negligently and carelessly lost and left and caused and permitted to be left in plaintiff's body a piece of rubber, plastic or foreign material and did close the incision with said piece of rubber, plastic or other foreign material remaining in plaintiff's abdomen." A jury trial resulted in a verdict in favor of the defendants after the trial court directed the jury to return such a verdict and plaintiffs appeal from the judgment entered in accordance therewith.

In December, 1936, plaintiff Mary Mondot, at the request of her family doctor, entered the Scripps Metabolic Clinic at La Jolla for a physical examination. After examination and study, the clinic reported she was suffering from an ovarian deficiency due to some pelvic inflammatory process, then quiescent. On April 5, 1937, defendant F. Burton Jones performed an abdominal operation on her to correct the position of her uterus and to free adhesions. Dr. Jones testified in this connection that he found that the entire pelvis was filled with a mass of adhesions which anchored the uterus tightly; that these were "freed-up" sufficiently to do the work that was necessary to replace the uterus to its normal position; that the tubes and ovaries were "freed-up" and that an appendectomy was also performed prior to closing due to the fact they found considerable adhesions and some evidence of chronic scarring

about the appendix; that he used surgical gloves and that before closing, a sponge count was made by the nurse.

For several years subsequent to this operation plaintiff suffered pain and discomfort. During 1938-1940 she developed nagging back pains an inch or two above the bottom of her spine and on July 24, 1953, her coccyx was removed, after which she was relieved of the back pains for a time but later they became worse. On January 31, 1953, plaintiff first met Dr. Frank J. Ragen, who treated her for urinary tract infection. She was admitted to the Chula Vista Hospital on April 3, 1953, with a diagnosis of lumbosacral strain and, upon her entry to the hospital, Dr. Ragen reported that in his examination he found abdomen and pelvic regions normal and there was nothing to indicate that she had a cyst on the adnexa, such as appeared when he operated on January 25, 1955. In May, 1953, she had a cautery to her cervix for a cervical discharge and in November had a hemorrhoidectomy. On July 7, 1954, Dr. Ragen performed an operation on plaintiff for repair of the cystocele (a herniation or collapse of the urinary bladder—a stretching of the ligaments or deterioration of the material which holds the bladder in an upright position). This operation was performed by entering the vaginal opening and making an inverted ''T'' shaped incision through the mucosa of the cervix on the anterior portion, separating the mucosa, and realigning or drawing them together so as to shorten and make a stronger covering. Following this operation plaintiff had some bleeding and was taken back to surgery. The bleeding was controlled by a product known as oxycel (a synthetic or plastic used to stop bleeding—a cloth-like substance which is placed in the wound to absorb the blood and is left to absorb itself.) In this connection the doctor testified that he used oxycel in the operation.

On January 3, 1955, plaintiff was hospitalized with a diagnosis of cervical stenosis and pyometrisis. She had pelvic pain and pain in the lower abdomen and urinary tract infection. She was treated and sent home and on January 24, 1955, she was again hospitalized with a diagnosis of right ovarian cyst. A cyst was removed by Dr. Ragen on January 25, 1955. It was the size of a small orange and was found to contain a piece of foreign matter approximately one and one-half inches long, one-half inch wide and one-eighth inch thick. Dr. Monroe, who assisted Dr. Ragen in the operation, testified that he thought it was a piece of either glove, rubber,

or a piece of rubber tube; that he was not positive that it was rubber.

Dr. Russell Pickard, a pathologist, reported that in the cyst there was a "sponge, that is, a piece of gauze in which there was a thin yellow brown material, it was squarish shape, it was about, as I recollect, about a half inch and it looked like rubber and I looked at it microscopically and it had sort of a network that had been pressed through it. It had a fabric-like appearance under the microscope and assuming it was rubber, I burned a piece of it to see if it would burn with that foul sulphur smoke and smell that burning rubber has. It just burned out with no such odor or appearance, so I didn't know what it was, except it was not—it was a foreign body"; that "there is nothing like that grows in people" and that he used up the specimen trying to find out what it was; that there was no way of determining accurately the length of time the foreign substance was in the body; that cysts with a puru-lent center around a foreign body have been known to be in a human body for months and perhaps years; that consider-ing the place where the foreign substance was found, it could not have gotten into the body through any orifice in the head, through the nose, ears or mouth and that there was no other orifice in the human body in which the piece of rubber could have been inserted so that it could have made its way to the place where it was found in surgery; that it was pos-sible that foreign material left in the body in a cystocele operation might cause infection and erode the tissues around it and to erode through the peritoneal.

Dr. D. Dalton Deeds, a specialist in obstetrics and gyne-cology, testified, in response to a hypothetical question em-bodying plaintiff's case, that in his opinion the foreign substance involved must have been introduced at the time of an operation and it was more apt to have been introduced at the time of the cystocele operation.

Following the operation removing the cyst, plaintiff's health improved and this action was commenced on October 31, 1955.

Appellants contend that the trial court erred in instructing the jury to return a verdict in favor of the defendants and we agree with this contention.

■ The power of the trial court to direct a verdict is absolutely the same as the power to grant a nonsuit. As is said in *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]:

"A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evi-

dence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.''

Considering the evidence herein in the light of the rules announced, viewing it in the light most favorable to the appellants, accepting every inference that legitimately may be drawn in their favor and disregarding evidence which is in conflict with evidence favorable to them, we cannot hold that there is no evidence of sufficient substantiality to support a verdict in favor of appellant if such a verdict were given. The only reasonable inference which can be drawn from the evidence is that the foreign substance found in the cyst removed from plaintiff was left in her body during an operation which was performed on her. While there was some evidence that it was possible that the foreign substance might have been left in plaintiff's body during the cystocele repair performed in 1954, this evidence merely presented a question of fact for the jury. Dr. Monroe testified that it would not be deemed good surgery to leave foreign matter within a surgical wound the size of the foreign matter involved; that rubber would cause a reaction if left in the human body and that a cyst such as the one in which the foreign material was found would be expected to cause pelvic complaints. Dr. Ragen testified that the chronic endometritis from which plaintiff was suffering could be caused by a focal infection in the broad ligament or ovary, which was the area in which the foreign material was left lodged. Plaintiff testified that from 1937 until the removal of the foreign matter in 1955 she had undergone much pain; that after the removal of the foreign material, she no longer suffered this pain.

Appellants contend that the doctrine of res ipsa loquitur is applicable in this case. In *Ales* v. *Ryan*, 8 Cal.2d 82 [64 P.2d 409], the doctrine was applied in an action against a physician in which action it was alleged that he negligently closed an incision after operating and failed to remove from

the abdominal cavity a large sponge which he had used in the operation. And in *Key* v. *Caldwell*, 39 Cal.App.2d 698 [104 P.2d 87], in a similar case, it was conceded by the parties that the doctrine was applicable. (Citing the Ales case, *supra.*) Respondent argues that the doctrine is inapplicable because of the evidence that the foreign substance could have been left in plaintiff's body at some other time and place than at the operation performed by Dr. Jones in 1937. However, this operation was under the exclusive control of Dr. Jones and plaintiff was in no way responsible for the foreign material left in her abdominal cavity. There was evidence that there was a mere possibility that the substance was left in her body at the cystocele repair performed in 1954.

As is held in *Danner* v. *Atkins*, 47 Cal.2d 327, 331 [303 P.2d 724] :

"It is ordinarily a question for the fact finder, first, whether facts which give rise to the res ipsa loquitur inference of negligence actually exist and, second, if the inference arises, whether it prevails or is overcome."

And in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 443-444 [247 P.2d 344], it is held :

"The requirement of control is not an absolute one. Although, as we have seen, the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident."

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.