[L. A. No. 26696.   In Bank.   June 7, 1962.]

LILLIAN E. SIVERSON, Plaintiff and Appellant, v. CHARLES E. WEBER et al., Defendants and Respondents.

Pollock & Pollock, Edward I. Pollock, David Pollock, William Pollack and Harvey R. Gerber for Plaintiff and Appellant.

Theodore A. Horn, Hirson & Horn, Ben C. Cohen, Richard L. Oliver, David M. Harney and Robert E. Ford as Amici Curiae on behalf of Plaintiff and Appellant.

McInnis, Focht & Fitzgerald and John W. McInnis for Defendants and Respondents.

GIBSON, C. J.—In this action for damages for alleged malpractice and negligence in the performance of a hysterectomy, the court granted a nonsuit as to defendant Dr. Jones, and the jury returned a verdict in favor of the other defendant, Dr. Weber. Plaintiff has appealed from the ensuing judgments, contending that she was entitled to the benefit of the inference of negligence which arises from the application of the doctrine of res ipsa loquitur and that therefore the court erred in granting the nonsuit as to Dr. Jones and in refusing to give requested instructions on the subject as to Dr. Weber.

As a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. (*Faulk* v. *Soberanes*, 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593] ; *Wolfsmith* v. *Marsh*, 51 Cal.2d 832, 835 [337 P.2d 70] ; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 442-447 [247 P.2d 344].) In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied on both common knowledge and the testimony of expert witnesses. (*Seneris* v. *Haas*, 45 Cal.2d 811, 824-826 [291 P.2d 915, 53 A.L.R.2d 124] ; *Zentz* v. *Coca Cola Bottling Co., supra*, 39 Cal.2d 436.) A statement in *Engelking* v. *Carlson*, 13 Cal.2d 216, 221 [88 P.2d 695], to the effect that res ipsa loquitur may be applied only where a layman is able to say as a matter of common knowledge that the injury would not ordinarily have occurred

without negligence is disapproved. (See *Seneris* v. *Haas*, *supra*.)

Dr. Weber, a specialist in obstetrics and gynecology, performed the hysterectomy, and Dr. Jones, a general surgeon, acted as his assistant. After the operation was completed plaintiff suffered a severe spasm whenever she voided, and about 10 days later there was a leakage of urine from the vagina. Dr. Weber examined her and found a vesicovaginal fistula, which is an opening through the wall of the bladder and the vagina. Plaintiff testified that after the examination Dr. Weber pointed to a chart on his desk and said, "I must have put a suture through the flap of the bladder there which caused the fistula." There was evidence that "bladder flap" is an informal term used to refer to the "vesico uterine reflection of the parietal peritoneum." (The parietal peritoneum is a membrane that lines the interior of the abdominal cavity.) Dr. Weber denied making the statement ascribed to him by Mrs. Siverson and explained that a suture through the "flap of the bladder" is "normal procedure," that "it is done in every case, and in doing so you can't cause a fistula."

Following the hysterectomy plaintiff was treated by other doctors for several months and then went to Canada where after further surgery the fistula was closed.

Plaintiff did not call an expert witness but relied on the testimony of Dr. Weber, elicited under section 2055 of the Code of Civil Procedure, and cross-examination of the defense witnesses. The medical witnesses agreed that the exact cause of a fistula appearing several days after a hysterectomy cannot ordinarily be ascertained and that they could not determine the cause of the fistula involved here. Fistulas may occur even though the surgeon has exercised the care and skill generally possessed and exercised by reputable gynecologists in the community, and the development of a fistula, although rare, is considered an inherent risk of the operation.*

It is known that such fistulas result from devascularization and necrosis (cutting off of the blood supply and death of tissue) in the place where the fistula is formed; a number of factors can contribute to the devascularization and necrosis,

---

*In *Dees* v. *Pace*, 118 Cal.App.2d 284, 289 [257 P.2d 756], a malpractice action based, as in the present case, on the development of a fistula after a hysterectomy, it is stated: "[T]he undisputed expert testimony shows that a fistula is a recognized hazard in all hysterectomies, one of the calculated risks; and while it does not occur very often from any cause, it may occur where the operation is performed under ideal conditions by the most skillful surgeon without negligence on his part."

and ordinarily it cannot be determined which of them were operative in a specific case. Among these factors are bruising of the bladder during the necessary separation of the uterus from the bladder, sutures or ligatures in the wall of the bladder to control bleeding caused in the separation, infection present in the cervix of the uterus and the vaginal vault adjacent to the bladder, and the tissue reaction of the individual to surgery and suture materials. Tissue reaction may be affected by previously existent weakness of the area, impairment of the blood supply in the area, and prior X-ray treatment administered to any part of the patient's body. (About one year prior to the hysterectomy, plaintiff had X-ray therapy in connection with the treatment of a malignancy of the breast.)

There is nothing to indicate that if the fistula was caused by any of the factors listed above or any combination of them the injury sustained by plaintiff was a result of negligence.

Another possible cause of a fistula recognized by the medical witnesses is an inadvertent suture from the vault of the vagina through the full thickness of the wall of the bladder. There was no evidence that this occurred. Dr. Weber and Dr. Jones denied that such a suture was placed and testified that the bladder and the vagina were kept well apart during the suturing.

Plaintiff's testimony that Dr. Weber told her that he must have put a suture through the "flap of the bladder" which caused the fistula cannot properly be regarded as showing a probability of negligence. The medical testimony is undisputed that it is necessary during the course of the operation to suture the part of the peritoneum which is referred to as the "bladder flap," and that this cannot cause a fistula. The statement ascribed to Dr. Weber by plaintiff cannot reasonably be interpreted as an admission that he probably by inadvertence sutured not only through the "bladder flap" but also through the wall of the bladder. Moreover, there was uncontradicted evidence that it is not possible that in suturing the "bladder flap" the bladder would be injured in the place where the fistula developed, because that part of the bladder is too far removed from the place where the suturing of the "bladder flap" occurs during an operation.

It is obvious that neither the cause of plaintiff's fistula nor the question whether, in the light of past experience, it was probably the result of negligence by defendants is a matter of common knowledge among laymen. None of

the witnesses testified that anything was done during the operation which was contrary to good medical practice. No medical witness testified that in the rare cases where fistulas occur they are more probably than not the result of negligence. As we have seen, the testimony was that they are considered an inherent risk of the operation and that they may occur where the operation is performed carefully and in accordance with proper practice.

Plaintiff relies on an affirmative answer of Dr. Weber to the question whether it was true that most of the time when a gynecologist exercises that degree of skill and care ordinarily exercised by reputable gynecologists a fistula does not follow a hysterectomy. However, in his answer Dr. Weber stressed by way of explanation that a fistula is not a common complication, and, when considered in its entirety, the answer means only that fistulas are a rare complication and does not mean that, when this unusual event does occur, there is a probability that it was caused by negligence rather than the various factors not involving negligence which were mentioned by Dr. Weber and the other medical witnesses.

The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probably caused by the negligence of those in charge of the operation. (*Wickoff* v. *James,* 159 Cal.App.2d 664, 669 [324 P.2d 661] ; *Salgo* v. *Leland Stanford etc. Board Trustees,* 154 Cal.App.2d 560, 569-571 [317 P.2d 170] ; *Dees* v. *Pace, supra,* 118 Cal. App.2d 284, 289.) Language to the contrary in *Valentine* v. *Kaiser Foundation Hospitals,* 194 Cal.App.2d 282, 287 [15 Cal.Rptr. 26], and *McDonald* v. *Foster Memorial Hospital,* 170 Cal.App.2d 85, 102 [338 P.2d 607], is disapproved.

To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in the light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible.

Since it cannot be said that the development of the fistula was more probably than not the result of negligence of

the defendants, the trial court correctly concluded that the doctrine of res ipsa loquitur was not applicable.

The judgments are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied July 3, 1962.