[Civ. No. 11038. Third Dist. Nov. 4, 1965.]

BEN INOUYE, Plaintiff and Appellant, v. HOWARD A. BLACK, Defendant and Respondent.

Colley & McGhee and Nathaniel S. Colley for Plaintiff and Appellant.

Hardin, Fletcher, Cook & Hayes, William J. Hayes and Cyril Viadro for Defendant and Respondent.

FRIEDMAN, J.—Plaintiff had been in an automobile accident. There had been a tearing of ligaments in his neck, causing a lack of stability between the first and second cervical vertebrae. Unless corrected, the condition made him vulnerable to paralysis. In April 1960 he underwent surgery performed by defendant, a neurosurgeon. Defendant wired together the vertebrae, using two pieces of stainless steel wire of a thickness designated as "No. 18." The wire, under constant tension, was expected to break ultimately but would permit the ligaments to heal while it held the bones together. Although broken, the wire would remain in the body and was not expected to cause any physical damage. Two years after the operation, X-rays revealed that the wire had broken into relatively small fragments, an event not expected by the defendant. Later X-rays showed that one fragment, approximately an inch long, had migrated downward to the lower spine, lodging between the inner surface of a vertebra and the dura or sheath encasing the spinal cord. The other fragments moved somewhat but remained in the general cervical area. Surgical removal of some of these wire fragments would be necessary. Plaintiff brought this damage suit, alleging medical malpractice.

The action went to trial before a jury. At the close of

plaintiff's case, defendant's counsel made a nonsuit motion which the trial court granted. Plaintiff appeals from the ensuing judgment, contending primarily that the res ipsa loquitur rule required the case to go to the jury.

Three witnesses testified. Defendant, called as an adverse witness, described the surgical procedure. The wire, of a kind customarily used in such operations, was supplied by the hospital in which the surgery occurred. As customary, a nurse handed it to the defendant during the surgery. Before applying the wire, he tested it manually and visually to see that it was free from kinks, notches or other signs of weakness. X-rays taken two years after the surgery revealed that the wire had fragmented. One piece had two breaks in it, the other had three. Although this condition was unexpected, defendant did not consider it a source of physical danger.

Plaintiff testified regarding the pains ascribed to the wire fragments. The third witness called by plaintiff was Dr. Holland, a neurosurgeon. He had examined X-rays taken shortly after the surgery. In his opinion the No. 18 wire was of the proper thickness and had been tied in accordance with good neurosurgical practice. According to standard practice, he testified, the wire would be cut from a spool by a surgical nurse and handed to the surgeon, who would examine it visually and manually for nicks or kinks before applying it to the patient. On the witness stand both Dr. Holland and defendant were asked to assume (a) that such wire was installed with standard surgical skill and (b) inspected for defects. On these assumptions both doctors testified that the breakage of the wire into migrating fragments was unexpected. Neither witness had seen, heard or read of such an occurrence.

 In a medical malpractice action the defendant is held to the standard of skill or care prevailing in the medical profession in the locality. Briefly stated, the res ipsa loquitur doctrine creates an inference of negligence where, in the light of past experience, (a) the accident was probably the result of someone's negligence and (b) the defendant is probably the responsible person. (*Fowler* v. *Seaton,* 61 Cal.2d 681, 686 [39 Cal.Rptr. 881, 394 P.2d 697] ; *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 446-447 [247 P.2d 344].) The plaintiff need not produce evidence excluding all possible causes other than the defendant's negligence. When the defendant's negligence is one of several possible causes reasonably inferable from the evidence, the choice or rejection of

that particular inference must be left to the jury and cannot be assumed by the trial judge. (*Davis* v. *Memorial Hospital*, 58 Cal.2d 815, 817 [26 Cal.Rptr. 633, 376 P.2d 561]; *Seneris* v. *Haas*, 45 Cal.2d 811, 826-827 [291 P.2d 915, 53 A.L.R.2d 124]; *Mondot* v. *Vallejo General Hospital*, 152 Cal.App.2d 588, 593 [313 P.2d 78].) Such a choice of inferences may be called "conditional res ipsa loquitur." (See *Quintal* v. *Laurel Grove Hospital*, 62 Cal.2d 154, 166 [41 Cal.Rptr. 577, 397 P.2d 161].)

In considering a nonsuit motion the trial judge must view the evidence in the light most favorable to the plaintiff. Thus, where there is any evidence to support the application of res ipsa loquitur, the trial court must deny a nonsuit motion. (*Greening* v. *General Air-Conditioning Corp.*, 233 Cal.App.2d 545, 553 [43 Cal.Rptr. 662]; *Reynolds* v. *Natural Gas Equipment, Inc.*, 184 Cal.App.2d 724, 735-736 [7 Cal.Rptr. 879].)

To determine whether there is a reasonable probability of negligence causation, the courts rely on "the light of past experience," which in turn may be drawn from expert testimony or common knowledge. The more esoteric kinds of medical causation demand expert testimony; others are within the reach of lay experience. (Compare *Davis* v. *Memorial Hospital, supra*, 58 Cal.2d at pp. 817-818, and *Siverson* v. *Weber*, 57 Cal.2d 834, 837 [22 Cal.Rptr. 337, 372 P.2d 97].) Laymen should not be barred from inferring the probable negligence of someone when surgery leaves a residual of dangerous, migrating pieces of metal in the human body. The evidence thus supplies the first precondition of res ipsa loquitur, a reasonable probability of negligence causation by someone. Nevertheless, the finger of probable fault must be pointed at the defendant before the court, not at thin air.[1] The pivotal inquiry here is whether plaintiff's evidence meets the second condition: whether it poses, as one of several reasonable inferences, a probability that defendant's negligence caused the wire to fragment.

Professional opinion, as expressed in the expert testimony of Dr. Holland and defendant himself, pointed away

---

[1]Dean Prosser describes the matter thus: "It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case." (Prosser, Torts (3d ed. 1964) p. 222.)

from the probability of defendant's negligence. The combined professional testimony had it that the wire was of the proper kind; that defendant's manual and visual testing measured up to standard practice; that the wire had been installed in a manner consistent with good neurosurgical practice; that its fragmentation in plaintiff's body was unexpected and unique. Common experience inquires whether the wire left the manufacturer's plant with hidden flaws or if there had been metal fatigue during long storage in the hospital supply room. The single fact that such mishaps do not ordinarily happen creates no probability of negligence on the part of the surgeon. (*Siverson* v. *Weber, supra,* 57 Cal.2d at p. 839; *Gerhardt* v. *Fresno Medical Group,* 217 Cal.App.2d 353 [31 Cal.Rptr. 633]; see Prosser, Torts (3d ed. 1964) p. 232; see Rubsamen, *A Reconsideration of Res Ipsa Loquitur in Medical Malpractice,* 15 Stan.L.Rev. 77.) Common experience reveals defendant's negligence as one of several available speculations, but not as a probability.

A group of persons and instrumentalities may combine in the performance of a medical procedure culminating in an unexpected, mysterious and disastrous result. With the sources of disaster personified in a group of defendants, the demand for evidence pointing the finger of probability at any one of them is relaxed; all may be called upon to give the jury evidence of care. (See, e.g., *Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509, 514 [305 P.2d 36]; *Seneris* v. *Haas, supra,* 45 Cal.2d at p. 826; *Dierman* v. *Providence Hospital,* 31 Cal.2d 290, 292 [188 P.2d 12]; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 494 [154 P.2d 687, 162 A.L.R. 1258].) We do not have that situation here. ▪ Neither the firm which manufactured the wire nor the hospital which supplied it has been sued. The negligence of each is just as possible as some unspecified and indeterminate lack of care on the surgeon's part. With only one of the several involved agents before the court, negligence could not be inferred without some evidence reasonably pointing to the surgeon. The trial court correctly concluded that there was no evidence to support the application of res ipsa loquitur.

Plaintiff poses the possibility that the one-inch wire later found in the lower vertebra was allowed to "fall into the spinal canal" during surgery. How such an event is physically possible is not suggested. Dr. Holland was shown an X-ray of the cervical area taken in May 1961, 13 months after the surgery. He stated that the wire had broken in one or two

places, but all was present at the location of the surgery. X-rays demonstrated that it was not until a later time that a piece of wire left the site of surgery and traveled elsewhere.

As a secondary contention, plaintiff urges that he made out a prima facie case of negligence independent of res ipsa loquitur. This is not one of those instances of egregious medical carelessness which can be appraised by laymen. Whether the defendant's conduct measured up to the level of medical care in the community could be established only by expert testimony. (*Lawless* v. *Calaway*, 24 Cal.2d 81, 86 [147 P.2d 604].) Plaintiff presented no such testimony, thus failed to establish a prima facie case.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.