[Civ. No. 1089.   Fifth Dist.   Oct. 14, 1969.]

ALICE J. KLINGER, Plaintiff and Respondent, v. ANDREW M. HENDERSON, Defendant and Appellant.

Peart, Hassard, Smith & Bonnington, Alan L. Bonnington, Wilke, Fleury, Sapunor & Hoffelt, Joe S. Gray and Richard G. Logan for Defendant and Appellant.

Werchick & Werchick and Arne Werchick for Plaintiff and Respondent.

GARGANO, J.—This action for medical malpractice was instituted by Alice J. Klinger against defendant, Andrew M. Henderson, M.D., for injuries sustained by Mrs. Klinger from a hysterectomy. After jury trial, the jury returned a verdict in favor of defendant, and judgment was entered accordingly. The trial judge granted plaintiff's motion for a new trial, first, on the ground that the evidence was insufficient to justify the verdict, and, second, because an error of law occurred when he gave a misleading instruction in connection with the doctrine of res ipsa loquitur.

On May 21, 1962, plaintiff went to Dr. L. W. Merrill, Jr., a general practitioner in Sacramento, for a physical examination. A smear test and a subsequent biopsy confirmed the presence of cancer of the cervix. However, the pathologist's report indicated the possibility that the malignancy had been completely removed by the biopsy. Nevertheless, Dr. Merrill referred plaintiff to Dr. Henderson, a specialist in obstetrics and gynecology. Defendant recommended a hysterectomy calling for the removal of the entire uterus, including the cervix, the right tube and ovary. There is no issue as to the wisdom of this recommendation.

Defendant performed the recommended hysterectomy at the Sutter Community Hospital in Sacramento, with Dr. Merrill's assistance. During the course of the operation defendant entered the vagina from the top and proceeded to cut first around the side in order to separate it from the uterus. As he cut around the left side, there was marked bleeding from a branch of the uterine artery, which obscured the operative field and hid the bleeding vessel from view. Defendant grasped where he thought the bleeding vessel was and caught it; he clamped and ligatured the bleeding artery. Defendant completed the operation without apparent complications. Sometime later plaintiff developed a ureter vaginal fistula, causing severe pain and discomfort and necessitating corrective surgery; the ureter is a tube several inches long running from the kidney to the bladder, and a ureter vaginal fistula is an opening between the ureter and the vagina.

At the trial, defendant testified that he believed that the injury to Mrs. Klinger's ureter was caused by accidental clamping, suturing or kinking when the uterine artery was clamped and ligatured to stop the profuse bleeding. This testimony as to the nature of the injury was corroborated by Dr. W. E. Jones and Dr. L. M. Boyers, both specialists in obstetrics and gynecology. Dr. Jones opined that in clamping and tying the bleeding artery the blood supply to the ureter was interfered with or a kinking or compression of the ureter occurred. Dr. Boyers said that in his opinion the injury resulted from angulations and tensions on the ureter which occurred when Dr. Henderson ligated the bleeding vessel.

Turning first to the court's order granting plaintiff a new trial on the ground that the evidence was insufficient to justify the jury's verdict, it is clear that the order not only complies with section 657 of the Code of Civil Procedure, as amended in 1965, but also demonstrates that the trial judge's action was "the product of a mature and careful reflection." (*Mercer* v. *Perez*, 68 Cal.2d 104, 113 [65 Cal.Rptr. 315, 436 P.2d 315].) The judge's specification of reasons reads as follows: "The defendant testified that he damaged the plaintiff's left ureter while performing the hysterectomy, but he did not actually know how the injury occurred. During the operation he encountered marked bleeding which obscured his operative field. He could not see the bleeding vessel, since it may have retracted somewhat, and so, using a clamp, he 'blindly grasped' where he thought the vessel was. In his opinion the damage to the ureter was done when he clamped the bleeder, possibly because the clamp was placed on the ureter.

"Dr. Boyers, a defense witness, testified on direct examination that when confronted with a bleeding artery the surgeon has 'many guides' to the location of the bleeder. He listed touch, seeing the pulsation of the artery, or seeing the origin of the bleeding. He contraindicated 'blind clamping.'

"Dr. Jones, another defense witness, testified on direct examination even more explicitly: that when confronted with a bleeder the surgeon stops the bleeder with his finger and 'then clamps.' On cross-examination he reiterated that the surgeon should feel for the loose end of the artery but should not 'go blind with a clamp.'

"The defendant excused his blind clamping by the 'extenuating circumstances,' i.e., the necessity of stopping the flow of blood. But it appears from the uncontradicted testimony of

his own witnesses that he violated the ordinary techniques of the profession by clamping blindly. The court concludes, therefore, that the verdict, which imports finding that the defendant proceeded with due care, is not supported by the evidence.'' Thus, we must look to the record to determine whether the judge's reasons for granting a new trial on this ground are supported by the evidence (*Mercer* v. *Perez, supra*). █ We shall bear in mind that on a motion for a new trial the trial judge may disbelieve witnesses, reweigh the evidence and draw reasonable inferences therefrom contrary to those of the trier of fact (*Ridge* v. *Calabrese Supply Co.,* 263 Cal.App.2d 546 [69 Cal.Rptr. 844]). █ We shall also bear in mind that all presumptions are in favor of the order and that we must not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear (*Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687]; *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165 [153 P.2d 338]).

█ Our independent review of the evidence impels the conclusion that the trial judge had sufficient basis to believe that defendant was negligent in the manner that he clamped the bleeding branch of the uterine artery and that this negligence was the proximate cause of the injury to Mrs. Klinger's ureter. The medical testimony is reasonably susceptible to the interpretation that defendant ''blindly'' clamped the bleeding branch of plaintiff's uterine artery, and that in doing so he did not exercise the degree of skill and learning required of a specialist in obstetrics and gynecology nor did he follow the ordinary procedures and techniques of his profession as practiced in the Sacramento area (*Inouye* v. *Black,* 238 Cal. App.2d 31, 33 [47 Cal.Rptr. 313, 14 A.L.R.3d 961]; *Lamb* v. *Moore,* 178 Cal.App.2d 819, 823 [3 Cal.Rptr. 507]). Dr. Boyers and Dr. Jones testified that the clamping of a bleeding vessel without locating the ''bleeder'' by sight or by feel with the hand (clamping blindly) is contraindicted because of the danger of injury to other structures such as the ureter. Both witnesses stated that when the surgical field is obscured by blood and cannot be cleared by mopping or suction, the correct procedure is to look for the source of the spurting blood or feel with the hand for the pulsating artery and to close off the flow with the finger.[1] Yet, despite the medical opinion as to the danger of ''clamping blindly'' and despite the medical

---

[1]For example, Dr. Jones testified:
''Q. Then if you run into some sort of a bleeder, if it is not too

techniques developed to obviate this danger, defendant testified as follows: "Well, as I cut across the left angle of the vagina there was profuse bleeding, and I saw the end of the vessel momentarily, asked for a clamp, by the time I got a clamp in my hand the field was obscured with blood, I tried to put pressure on it, this wasn't successful, I had seen exactly where it was coming from, and I felt that I could put a clamp on it and stop the bleeding, so I put the clamp on the side of the vagina right at the area where I thought that bleeder was, and the bleeding stopped, we mopped up.''

Defendant argues that in arriving at his decision, the trial judge relied on isolated portions of his testimony. He asserts that when he testified that he "blindly grasped" where he thought the bleeder was coming from, he was not using the word "blind" in the same context used by Dr. Jones and Dr. Boyers. Defendant explains that when he used the term "blind" he meant only that his vision was obscured, and did not mean that he did not use one of the approved techniques described by the medical experts. He concludes that when his testimony is viewed as a whole, it is clear that he used an approved technique because he said that he saw the end of the bleeder momentarily and, although it went out of his vision,

---

severe, you can just suction it out and then clamp and ligate it, is that right?
A. Yes.
Q. And if it happens to be severe, you stop everything you are doing and get that bleeder?
A. Correct.
Q. But you exercise care when you are getting the bleeder, don't you?
A. Yes.
Q. You don't go wild with a ligature before you have even located or identified the bleeder, do you?
A. No.
Q. No. Now you indicated to Mr. Bonnington that if you can see the bleeder, you put a clamp on it?
A. Yes.
Q. And if you can't see it, you get your hand in there and fish around to find it, squeeze it off, is that right?
A. Yes. Or you use the sponges or the suction. I mentioned whatever means that you feel are best calculated to control the bleeding temporarily.
Q. So you would have, then, those three cases; if you can see it, you clamp it, if you can't see it, you either suction it out or mop it up, or you go in by hand?
A. Yes.
Q. All right. Now, the reason you would use your hand, I suppose, is because then you can feel what you are running into—
A. To some degree.
Q. And then you can tell when you do grab the bleeder, that you will have a notion that you have probably got the bleeder and, say, not the bladder?
A. Yes, that's true.''

he saw "exactly where it was coming from" and clamped at this spot.

Admittedly, defendant's arguments are persuasive. However, they are not conclusive at the appellate level. While it may be true that his testimony, when viewed as a whole, is susceptible to the interpretation contested for, it is also susceptible to the interpretation given to it by the trial judge. Defendant said that he "blindly grasped the . . . where I *thought* this bleeder was coming from." He also said that he saw the end of the vessel momentarily, but by the time he got the clamp in his hand the view was obscured with blood. Defendant added that he "had seen exactly where it was coming from" so he put the clamp "right at the area where [he] thought the bleeder was. . . ." And, significantly, Dr. Jones stated that an injury to the ureter was *never justified.* We cannot hold that it was a manifest abuse of discretion for the trial judge to grant a new trial on the ground that the evidence was insufficient to justify the verdict.

■ In view of the possibility of another trial, we turn next to the question of whether the trial judge erred when he modified the standard jury instruction on the doctrine of res ipsa loquitur (BAJI 214-W) to read as follows:

"You must decide the following questions concerning the injury involved in this case.

"Is it the kind of injury which ordinarily does not occur in the absence of negligence?

"Whether the injury is one which ordinarily does not occur in the absence of negligence is to be determined from the evidence presented in this trial by physicians and surgeons called as expert witnesses, including the evidence given by the defendant.

*"The mere fact that a particular injury does not ordinarily result from a hysterectomy does not, in and of itself, prove that it was caused by negligence.*

"If, and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence, you are instructed as follows:

"From the happening of the injury involved in this case, an inference may be drawn that a proximate cause of the occurrence was some negligent conduct on the part of the defendant." (Italics added.)

In the leading case of *Siverson* v. *Weber,* 57 Cal.2d 834 [22 Cal.Rptr. 337, 372 P.2d 97], the California Supreme Court held that if the evidence merely proves that a

patient has suffered an unfortunate result which rarely occurs from a hysterectomy, it is not sufficient to establish negligence on the part of the operating surgeon nor does it warrant the application of the doctrine of res ipsa loquitur. The court at page 839 stated: ''To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used.'' If the evidence in this case had proved only that Mrs. Klinger had suffered a vaginal fistula and that vaginal fistulas rarely occur from a hysterectomy, plaintiff would not have been entitled to any instruction on the doctrine of res ipsa loquitur.[2] As we have seen, the medical evidence proved that the vaginal fistula was caused by a kinking or compression of the ureter which occurred when defendant clamped the bleeding branch of the uterine artery. Moreover, as we have stated, the medical testimony was reasonably susceptible to the interpretation that such an injury rarely occurs in the absence of some negligence on the part of the operating surgeon. The trial judge therefore properly gave a conditional instruction on the doctrine of res ipsa loquitur (*Gerhardt* v. *Fresno Medical Group,* 217 Cal.App.2d 353 [31 Cal.Rptr. 633]). But, since there was also substantial evidence that vaginal fistulas rarely occur from hysterectomies, the court gave a ''mere fact'' instruction to prevent the jury from finding defendant guilty of negligence solely because of the rarity of the occurrence.

The crucial question, therefore, is whether the ''mere fact'' instruction which the trial judge gave as a part of the res ipsa loquitur instruction, without explanation or clarification, was misleading. We conclude that it was. The trial judge told the jury that if they found that plaintiff's injury is ''the kind of injury which ordinarily does not occur in the absence of negligence,'' they could draw an inference ''that a proximate cause of the occurrence was some negligent conduct on the part of the defendant.'' However, in almost the same breath, the judge also told the jury that ''the mere fact that a particular injury does not ordinarily result from a hysterectomy

---

[2]For example, in *Siverson* v. *Weber, supra,* 57 Cal.2d 834, 837, a fistula occurred several days after the hysterectomy and there was no evidence as to the cause. Moreover, according to the medical testimony adduced in that case, a fistula is one of the inherent risks of such an operation. Thus, the court held that the doctrine of res ipsa loquitur was inapplicable.

does not, in and of itself, prove that it was caused by negligence." Then, he informed the jury "if and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence, you are instructed as follows. . . ." Without an appropriate explanation which would have enabled the jury to properly correlate and reconcile the two instructions, it is possible that they were confused and even misled. (See *Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266 [1 Cal.Rptr. 330, 347 P.2d 674].) As the court aptly stated in *Getas* v. *Hook*, 236 Cal.App.2d 705, 713 [46 Cal.Rptr. 249], with reference to the giving of a "mere fact of the accident" instruction in conjunction with the res ipsa loquitur instruction: ". . . where there is evidence warranting the application of the doctrine of res ipsa loquitur but it is not applicable as a matter of law, it is recognized that where both instructions are given without an explanation, an order granting a new trial should be affirmed; . . ."

The order is affirmed.

Stone, P. J., concurred.