[Civ. No. 26244. Fourth Dist., Div. One. Dec. 10, 1982.]

JUDY KILBURN et al., Plaintiffs and Appellants, v.
ANSELMO PINEDA, Defendant and Respondent.

**COUNSEL**

F. Gordon Chytraus for Plaintiffs and Appellants.

Bonne, Jones, Bridges, Mueller & O'Keefe and Mark V. Franzen for Defendant and Respondent.

**OPINION**

**BROWN (Gerald), P. J.**—Judy and Duane Kilburn appeal the dismissal of their action against Anselmo Pineda, M.D., contending the superior court erred in finding the statute of limitations had run.

On November 21, 1975, the Kilburns sued Pineda, alleging medical malpractice. The superior court found the one-year statute of limitations of Code of Civil Procedure section 340.5 began to run on the action no later than May 12, 1974, the date Judy terminated her doctor-patient relationship with Pineda. Based on this finding, the suit was dismissed.

Pineda treated Judy for her injured back from April 12, 1973, until May 12, 1974. During that time, he operated on Judy three times in an attempt to alleviate her back pain. The operations were much more painful than Pineda had told Judy they would be and produced no positive results. After the second operation, Judy asked Pineda why the operations had been ineffective and he said he should have performed a fusion operation on her back. By May 12, 1974, the condition of Judy's back had deteriorated to the point she could not walk or stand. When her calls to Pineda on that day met with what she considered insufficient response (she says he told her to "crawl" to his office if necessary), she discharged him as her doctor.

Judy then saw other doctors who, within a year before the filing of the complaint, told her Pineda was the only physician in Orange County using the procedures he attempted with Judy. The Kilburns claim these doctors also said Pineda had not done all the exploratory surgery he claimed to have done. Judy further says it was 1975 before she learned Pineda had failed to discuss with her the results of tests performed in March 1973. The Kilburns claim these misrepresentations and failures to disclose by Pineda vitiate Judy's consent to the operations Pineda performed.

Code of Civil Procedure section 340.5 requires an action against a health care provider, based upon professional negligence, be brought within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury. The superior court found the one-year period began to run on May 12, 1974, the date Judy discharged Pineda, because by then a reasonable person in Judy's position should have recognized there existed the basis for a malpractice action against Pineda. We must determine whether sufficient evidence was presented to support that finding.

The evidence presented by Pineda to establish Judy was, or should have been, on notice of malpractice by him was threefold: (1) the operations were more painful than he had told Judy they would be; (2) he told Judy he should

have fused her back; and (3) Judy was sufficiently disappointed with the treatment to warrant her discharging him. To affirm the superior court's ruling, we must find these factors were, as a matter of law, sufficient to put Judy on notice that through the exercise of reasonable diligence, she should have discovered not only her injuries but also the fact her injuries were caused by conduct of Pineda falling below that of a physician in good standing in the community (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 97 [132 Cal.Rptr. 657, 553 P.2d 1129]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885, 888 [112 Cal.Rptr. 540, 519 P.2d 588]).

██ The pain caused by the operations and Judy's decision to discharge Pineda do not support the finding Judy was, or should have been, on notice of malpractice by Pineda. Pineda argues the pain was sufficient to put her on notice because he told her the procedures would be painless. ██ This argument is not supported by the case law; even where an operation leads to rare and unforeseen injuries, malpractice will not be inferred (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 237 [104 Cal.Rptr. 505, 502 P.2d 1]; *Siverson* v. *Weber* (1962) 57 Cal.2d 834, 839 [22 Cal.Rptr. 337, 372 P.2d 97]; *Contreras* v. *St. Luke's Hospital* (1978) 78 Cal.App.3d 919, 931 [144 Cal.Rptr. 647]). ██ No evidence was presented to show Judy had any reason to believe the pain was caused by Pineda's failure to exercise due care. Nor was there any evidence Judy terminated her doctor-patient relationship with Pineda because she believed he had committed malpractice. On May 12, 1974, the date set by the superior court as the time the statute of limitations began to run, Judy tried to see Pineda; her decision to discharge him came only after he refused to send an ambulance or admit her to the hospital. That decision does not reflect knowledge of malpractice.

The evidence most heavily relied upon by Pineda to prove Judy should have been on notice of any malpractice by May 12, 1974, is his statement admitting he should have fused her back. This evidence does not suffice. ██ "[A]n extrajudicial statement amounting to no more than an admission of bona fide mistake of judgment or untoward result of treatment is not alone sufficient to permit the inference of breach of duty; the statement 'must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken.'" (*Lashley* v. *Koerber* (1945) 26 Cal.2d 83, 89-90 [156 Cal.Rptr. 441]; *Contreras* v. *St. Luke's Hospital, supra*, 78 Cal.App.3d 919, 933.) The ability of a physician, with the aid of hindsight, to look back on his work and decide he should have used a different procedure does not prove he failed in the first place to exercise the skill and care required of a physician under the circumstances and a statement of hindsight does not put a patient on notice of such a failure. Even where physicians have admitted "fault" or "blamed themselves" for the patient's worsened condition, courts have refused to infer the presence of malpractice from the admissions. (See *Cobbs* v. *Grant, supra,* 8

Cal.3d 229, 238; *Phillips* v. *Powell* (1930) 210 Cal. 39, 43 [290 P. 441]; *Donahoo* v. *Lovas* (1930) 105 Cal.App. 705, 710-711 [288 P. 698]; *Markart* v. *Zeimer* (1924) 67 Cal.App. 363, 371 [227 P. 683].) Pineda stated he should have fused Judy's back, not that it was a mistake to fail to do so, and Judy testified she did not interpret the statement as an admission of mistake. The statement does not support a finding Judy had actual or constructive knowledge of malpractice.

Our holding of insufficient evidence to support the finding Judy knew, or should have known, of the cause of her injuries earlier than a year before the filing of this case makes it unnecessary to address her argument relating to the lack of informed consent cause of action. That claim did not accrue before the time the statute began to run on her claim based on the choice and execution of the operations.

This action was timely filed as to all causes of action.

Judgment reversed.

Staniforth, J., and Work, J., concurred.