Filed 5/7/13  Herold v. Salix Pharmaceuticals CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ELDRIDGE HEROLD, | C071037 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0028300) |
| v. | |
| SALIX PHARMACEUTICALS, INC., | |
| Defendant and Respondent. | |

After using a bowel cleansing/purgative product manufactured by defendant Salix Pharmaceuticals, Inc., plaintiff Eldridge Herold had to be placed on dialysis treatment for kidney failure.  In November 2007, one of his physicians told him that the product should not have been prescribed to him and that if he had not taken it he would not need dialysis. Herold did not commence this action against Salix until three years later.  The trial court granted summary judgment to Salix on the ground that Herold's claims were time-barred

1

because Herold knew of his injury and of its cause more than two years before he commenced the action.[1]

As we will explain, the trial court properly granted Salix's motion for summary judgment. Under the delayed discovery rule, the plaintiff must not only know of his injury and its factual cause, but must also suspect the injury is due to someone's wrongdoing to begin the running of the statute of limitations. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 (*Jolly*).) Here, the undisputed evidence shows that more than two years before he brought suit against Salix, Herold had sufficient information to cause a reasonable person to suspect his injuries were caused by wrongdoing. Accordingly, we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The basic facts are undisputed. On or about July 10, 2007, in anticipation of a colonoscopy, Herold ingested a bowel cleansing/purgative product known as OsmoPrep. In November 2007, one of Herold's physicians, nephrologist Adarsh Bhat, who had been treating Herold for renal problems since 2006, told Herold that he needed to go on dialysis, that the bowel purgative product should not have been prescribed to him, and that if he had not taken the product he would not need to be on dialysis. Herold began receiving dialysis treatment in January 2008.

On November 22, 2010, Herold commenced this action against Salix, the manufacturer of OsmoPrep. As relevant here, Herold asserted causes of action for strict products liability (manufacturing defect and failure to warn), negligence, and negligent

---

[1] Although, as we explain *post*, the trial court appears to have misstated the test for ascertaining whether the statute of limitations commenced running by omitting the requirement of a suspicion of wrongdoing, we review the *result* of the trial court's decision, not its *reasoning*. (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653.)

2

misrepresentation.[2] Herold alleged that the failure of his kidneys was the result of his use of OsmoPrep. He further alleged that the product was defective and that the defect in the product was not revealed to the public until October 2009, when the FDA first required the product to carry a "black box" warning of the risk of acute phosphate nephropathy, and Salix issued a "Dear Healthcare Provider" letter informing prescribing doctors of the new black box warning.

In its answer to the complaint, Salix raised 36 affirmative defenses, including the bar of the statute of limitations. In October 2011, Salix moved for summary judgment based on the two-year statute of limitations in Code of Civil Procedure section 335.1.[3] Salix argued that, based on the facts we have set forth *ante*, Herold "knew about the potential for wrongdoing as of November 2007, and he did not file his lawsuit until late November 2010." According to Salix, based on Herold's deposition testimony, Herold "by his own admission, had information in November, 2007 that the bowel-prep product he took prior to his colonoscopy that summer caused him an injury, i.e. caused such kidney failure as to require him to begin dialysis. He therefore had until November 2009 to file the instant lawsuit against the manufacturer of the bowel-prep product."

In opposition to the motion, Herold argued that Salix had not met its initial burden on summary judgment of demonstrating the absence of any triable issue of fact because the evidence on which Salix relied was subject to more than one legitimate inference as to what Herold suspected or should have suspected upon receiving the information from Dr. Bhat in November 2007. Herold also argued that even if Salix had met its burden,

---

[2] Other causes of action included in the complaint were dismissed on Herold's request simultaneous with the filing of his opposition to the summary judgment motion.

[3] This statute establishes a two-year limitations period for "[a]n action for . . . injury to . . . an individual caused by the wrongful act or neglect of another." (Code Civ. Proc., § 335.1.)

Herold had raised a triable issue of fact by producing evidence that he did not suspect wrongdoing by the manufacturer of OsmoPrep until May 2010 and that in November Dr. Bhat had not "indicate[d] or impl[ied] there was any wrongdoing on the part of [the manufacturer]."[4]  Herold also asked for leave to amend his complaint if the court found that he had failed to show the existence of a triable issue of fact.

The trial court granted Salix's motion, concluding that "the statute of limitations began to run in November of 2007" because "[Herold] himself admits to knowledge of his injury and the cause of his injury" as of that date.  The court also denied Herold's request to amend his complaint, noting that Herold had "presented no possible amendment that would overcome" the bar of the statute of limitations.

Herold timely appealed from the resulting judgment.[5]

---

[4] In opposing Salix's motion for summary judgment, Herold failed to comply with the procedural rules.  The response to the moving party's separate statement must state whether each fact is "disputed" or "undisputed."  (Cal. Rules of Court, rule 3.1350(f); see Code Civ. Proc., § 437c, subd. (b)(3).)  Instead, Herold "objected" to certain facts, contending they misstated his deposition.  Objections to evidence in papers on a motion for summary judgment must either be made in writing or at the hearing with a court reporter present.  (Cal. Rules of Court, rule 3.1352.)  The trial court ruled any objection would be overruled and Salix's separate statement did not misstate Herold's deposition testimony.

[5] The document the parties have treated as a judgment in the action is actually entitled "ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SALIX PHARMACEUTICALS, INC."  The body of the document, however, includes the phrase, "Judgment shall hereby be entered in favor of defendant," and the notice of entry that was served with relation to this document specified that the document constituted both an order granting summary judgment and the judgment itself.

4

## DISCUSSION

### I

*Standard of Review on Summary Judgment*

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

"Because the trial court's determination [on a motion for summary judgment] is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279.)

"The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. [Citation.]" (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874.) "[A] motion for summary judgment should

5

not be granted where reasonable minds could draw different conclusions from the evidence presented. [Citation.]" (*Hills v. Aronsohn* (1984) 152 Cal.App.3d 753, 759.)

II

*The Statute of Limitations and Delayed Discovery*

A cause of action for personal injury, like all of the causes of action here, "accrues on the date of injury--unless application of the discovery rule delays the time of accrual. [Citation.] 'Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'" (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 779 (*Goldrich*), quoting *Jolly, supra,* 44 Cal.3d at p. 1110.)

As is apparent from the foregoing language from *Jolly* --"suspects or should suspect"-- the discovery rule "sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391 (*Kitzig*).)

"[I]t is not enough to commence the running of the limitations period when the plaintiff knows of her injury and its factual cause (or physical cause)." (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1057 (*Clark*).) Instead, the limitations period does not begin to run under the discovery rule until the plaintiff suspects or should suspect that he has been injured by a negligent cause or someone's *wrongdoing*. (See *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.)

A plaintiff, however, need not be aware of the facts that establish the wrongdoing to commence the statute of limitations; he needs only "a suspicion of wrongdoing." (*Jolly*, *supra*, 44 Cal.3d at p. 1110.) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.

6

Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly*, *supra*, at p. 1110.)

Finally, "[w]hile resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly*, *supra*, 44 Cal.3d at p. 1112.)

III

*Analysis*

On appeal, Herold contends Salix failed to meet its initial burden on summary judgment of showing there was no triable issue of material fact because, "Dr. Bhat's statement to the patient [that the product should not have been prescribed to him and that he would not have needed dialysis if he had not taken it] does not establish the patient's state of mind, as a matter of law, upon which reasonable persons cannot disagree. . . . Reasonable persons can reach a myriad of states of mind from the doctor's statement."

To the extent this argument and the arguments that follow are based on the premise that it was Salix's burden to establish *Herold's* subjective state of mind[6]--that is, what Herold himself suspected, instead of what a reasonable person would have suspected--the arguments are misplaced because Salix did not base its motion for summary judgment on the theory that the statute of limitations began to run based on Herold's actual suspicions of wrongdoing. Instead, as Salix explains, it "moved for summary judgment on the basis that Mr. Herold's own deposition testimony established

---

[6] As an example, Herold refers to subdivision (e) of Code of Civil Procedure section 437c, which provides in part that "summary judgment may be denied in the discretion of the court, . . . where a material fact is an individual's state of mind."

that *a reasonable person* would have suspected some wrongdoing in November 2007." (Italics added.) In other words, this case involves the *objective* test for triggering the limitations period under the discovery rule, not the subjective test.

In determining whether summary judgment was proper under the objective test, the question raised is whether the evidence Salix presented--namely, what Dr. Bhat told Herold in November 2007--supports the conclusion that, as a matter of law, a reasonable person would have suspected at that time that the failure of his kidneys was caused by someone's wrongdoing. We conclude the answer is yes.

Dr. Bhat told Herold that the drug he had taken before his colonoscopy caused his kidney failure and his resulting need for dialysis. Thus, Herold knew of his injury and its factual cause. Further, he was put on notice that the cause was negligent or wrongful because Dr. Bhat told him that he *should not* have been prescribed the drug. When one is told something *should not* have happened, the reasonable response is to at least suspect that there may have been wrongdoing involved in the happening. The use of "should not" alone does not, of course, establish wrongdoing. There are other possible explanations for a happening that "should not" have occurred. But to commence the running of the statute of limitations a plaintiff need not have the facts to establish his claim; he needs only a *suspicion* of wrongdoing. (*Jolly*, *supra*, 44 Cal.3d at p. 1110.) "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citation.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).)

Here Dr. Bhat told Herold that the drug caused his injury, and further, that he *should not* have been prescribed it, providing both causation and a suspicion of wrongdoing. Both in his opposition to the summary judgment motion and at oral argument, Herold agreed Dr. Bhat's statements *may* have given him reason to suspect wrongdoing on the part of the doctor who prescribed the drug. He argues, however, that

8

this knowledge is insufficient to give him inquiry notice of any wrongdoing by Salix. He relies on *Fox, supra,* 35 Cal.4th 797, but *Fox* does not aid Herold.

In *Fox*, plaintiff filed a medical malpractice action after undergoing gastric bypass surgery that resulted in severe complications. During discovery, she learned that a medical device, a stapler, may have malfunctioned, causing her injury. When she amended her complaint to add the manufacturer of the medical device as a defendant, the manufacturer demurred, raising a statute of limitations defense. Fox responded by relying on the delayed discovery rule. (*Fox, supra*, 35 Cal.4th at p. 802.)

Our Supreme Court rejected the rule that all claims arising from an injury accrue simultaneously, even if based on different types of wrongdoing. (*Fox, supra*, 35 Cal.4th at pp. 804-805.) Instead, the court held "that, under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox, supra*, at p. 803.) Since Fox proposed to amend her complaint to allege she did not discover or suspect, and could not have through reasonable diligence, that the stapler was the cause of her injury until she learned of the device during a deposition, it was proper to permit amendment. (*Id*. at p. 811.)

*Fox* is distinguishable on several grounds. First, it is factually distinguishable. Fox had no knowledge of the medical device that allegedly caused her injury until she learned of it during discovery. Here Herold was aware of the drug that caused his injury because Dr. Bhat told him. Second, the procedural posture of the two cases differs. In *Fox*, the case was before the court on a demurrer, so the issue was the sufficiency of the pleadings. The *Fox* court noted that prior cases discussing the discovery rule arose on summary judgment, as here, where there was "a more fully developed factual basis for determining when and how the plaintiff discovered an injury." (*Fox, supra*, 35 Cal.4th at p. 810.) Finally, Fox proposed an amendment containing specific allegations about why

9

she was unable to discover the stapler malfunction earlier. (*Fox, supra,* at p. 811.) Here, although Herold requests leave to amend, he offers no specific amendment to explain that he would not, through the exercise of reasonable diligence and investigation, have suspected that the wrongdoing was the defective nature of the drug or the manufacturer's failure to warn rather than the error of the prescribing doctor.

On its motion for summary judgment, Salix was required to "negate plaintiff's theories of liability as alleged in the complaint. A 'moving party need not "... refute liability on some theoretical possibility not included in the pleadings." [Citation.]' [Citation.] " '[A] motion for summary judgment must be directed to the issues raised by the pleadings. The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings." [Citation.]' [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342-1343.)

Herold argues that even when a plaintiff is aware of the product that caused his injury there can still be a triable issue as to *when* he should have suspected wrongdoing, citing *Clark, supra,* 83 Cal.App.4th 1048. In *Clark*, a nurse suffered adverse reactions (rashes and difficulty breathing) when she wore latex gloves; she suspected she was allergic to latex gloves, but declined testing. (*Clark, supra*, 83 Cal.App.4th at pp. 1052-1053.) After suffering an anaphylactic attack during an exam by a doctor wearing latex gloves, Clark joined a support group where she learned there might be a defect in the manufacturing of latex gloves. (*Clark, supra,* at p. 1053.)

Clark filed suit against several manufacturers, claiming a defective product. (*Clark, supra,* 83 Cal.App.4th at p. 1053.) The manufacturers answered and moved for summary judgment on the grounds that the suit was barred by the statute of limitations. They argued the limitations period began to run when Clark was first aware of her injury and attributed it to latex gloves. (*Clark, supra*, at p. 1053.) Clark responded that her initial adverse reactions did not put her on notice of any wrongdoing and she believed the

gloves were safe until she learned from the support group of the possible manufacturing defect. (*Id*. at p. 1054.) The trial court granted summary judgment. (*Ibid*.)

The appellate court reversed, finding a triable issue as to when Clark suspected wrongdoing because the undisputed evidence gave rise to more than one inference with respect to Clark's knowledge. (*Clark, supra,* 83 Cal.App.4th at p. 1059.) She could have believed her injury was due only to her allergy until she learned of the possible manufacturing defect or she could have inferred from her severe reaction that more than a natural allergy was involved, possibly a defect in the product. (*Clark, supra,* at pp. 1059-1060.)

In connection with his reliance on *Clark*, Herold argues various reasonable inferences may be drawn from his November 2007 conversation with Dr. Bhat. He contends reasonable persons could have concluded he should not have taken the drug due to his age, his medical condition, or his lifestyle. But regardless of *why* he should not have been given the drug, the fact remains that, unlike Clark, in November 2007 he was told that he was given the drug when he *should not have been*, which we conclude was sufficient to lead a reasonable person to suspect that someone did something wrong-- either the drug should not have been prescribed for him (for any of a number of reasons) or the drug itself was defective. A suspicion of wrongdoing as to either of these happenings commenced the running of the statute of limitations, and his conversation with Dr. Bhat provided the requisite notice to generate that suspicion.

The dissent posits that "a reasonable person in Herold's position might have thought that Dr. Bhat was doing no more than expressing his belief, in hindsight, that a different drug should have been used because of the unfortunate side effect that resulted from the use of OsmoPrep." The idea that a physician's mere "statement of hindsight" does not put a patient on notice of that physician's failure to exercise the required skill and care is expressed in *Kilburn v. Pineda* (1982) 137 Cal.App.3d 1046, 1049 (*Kilburn*). In *Kilburn*, the plaintiffs (Judy and Duane Kilburn) sued a physician (Anselmo Pineda)

11

for medical malpractice based on Pineda's treatment of Judy for an injured back. (*Kilburn*, *supra*, 137 Cal.App.3d at p. 1048.)  After two operations that "were much more painful than Pineda had told Judy they would be and produced no positive results," "Judy asked Pineda why the operations had been ineffective and he said he should have performed a fusion operation on her back." (*Kilburn, supra,* at p. 1048.)  After a third surgery did not improve Judy's condition, and it came "to the point she could not walk or stand," Judy discharged Pineda as her doctor. (*Ibid.*)  More than a year passed before the Kilburns brought their action against Pineda.**7**  The trial court dismissed the action on the ground the statute of limitations had run before the action was commenced. (*Ibid*.)  The appellate court reversed, concluding there was "insufficient evidence to support the finding that Judy knew, or should have known, of the cause of her injuries earlier than a year before the filing of this case." (*Kilburn*, *supra*, at p. 1050.)  The court explained that Judy's pain, after being told the procedure would be painless, did not support the finding Judy was, or should have been, on notice of malpractice by Pineda because even where an operation leads to rare or unforeseen injuries, malpractice will not be inferred. (*Id*. at p. 1049.)

The court then turned to evidence of Pineda's statement to Judy admitting that he should have fused her back.  "This evidence does not suffice.  '[A]n extrajudicial statement amounting to no more than an admission of bona fide mistake of judgment or untoward result of treatment is not alone sufficient to permit the inference of breach of duty; the statement "must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken.'" [Citations.]  The ability of a physician, with the aid of hindsight, to look back on his work and decide he should have used a different procedure does not prove he failed in the first place to exercise the skill

---

**7**  Medical malpractice actions are subject to a one-year limitations period from the date of discovery under Code of Civil Procedure section 340.5.

12

and care required of a physician under the circumstances and a statement of hindsight does not put a patient on notice of such a failure. Even where physicians have admitted 'fault' or 'blamed themselves' for the patient's worsened condition, courts have refused to infer the presence of malpractice from the admissions. [Citations.] Pineda stated he should have fused Judy's back, not that it was a mistake to fail to do so, and Judy testified she did not interpret the statement as an admission of mistake. The statement does not support a finding Judy had actual or constructive knowledge of malpractice." (*Kilburn*, *supra*, 137 Cal.App.3d at pp. 1049-1050.)

We find *Kilburn* distinguishable. First, Dr. Bhat's statements were more expansive than Dr. Pineda's admission that he "should have" fused her back. Dr. Bhat opined both that Herold should not have been prescribed the drug and that the drug caused his kidney failure. Dr. Bhat's statements were not solely an expression of compassion or remorse. (See *Cobbs v. Grant* (1972) 8 Cal.3d 229, 238 [that doctor blamed himself not an admission of malpractice].) His statements were akin to a second opinion that found fault with the earlier actions of another; he opined that Herold should not have been prescribed the drug. An unfavorable second opinion clearly can provide the basis for a suspicion of wrongdoing. For example, in *Goldrich, supra,* 25 Cal.App.4th 772, 780, the court found a reasonable suspicion of wrongdoing with respect to breast implants where three specialists recommended their removal. (Compare with *Kitzig, supra,* 81 Cal.App.4th at p. 1393 [seeking a second opinion does not raise suspicion of wrongdoing where second physician confirms that first is "doing nothing wrong"].)

Second, *Kilburn* is a pre-*Jolly* case. It focuses on when plaintiffs "had actual or constructive knowledge of malpractice." (*Kilburn*, *supra*, 137 Cal.App.3d at p. 1050.) Here we are concerned with only the *suspicion* of wrongdoing. (*Jolly*, *supra*, 44 Cal.3d at p. 1110.) Further, we note that none of cases on which *Kilburn* relied involved a statute of limitations defense. Instead, their issue was whether certain statements by

13

treating physicians or unforeseen injuries provided an inference of malpractice. (*Kilburn*, *supra*, at p. 1049.) That is a different question than whether a statement by a specialist with whom the plaintiff has a longstanding relationship that a different doctor should not have done something and the fact that he did caused plaintiff's gives rise in a reasonable person to a suspicion of wrongdoing. For the reasons explained *ante*, we conclude that as a matter of law the answer is yes.

## DISPOSITION

The judgment is affirmed. Salix shall recover costs on appeal. (Cal. Rules of Court, rule 8.276(a)(2).)


                                                DUARTE               , J.


I concur:


             NICHOLSON             , Acting P. J.

I respectfully dissent. In my view, Dr. Bhat's statement to Herold that he should not have been prescribed OsmoPrep was not sufficient, without more, to require a finding *as a matter of law* that Herold should have suspected his kidney failure was caused by someone's *wrongdoing* relating to the purgative product. Could a reasonable trier of fact reach that conclusion? Absolutely. But we are not the trier of fact, and we can affirm the summary judgment only if the undisputed facts support only one reasonable conclusion on this point. I do not think they do. I think a reasonable trier of fact could find that a person in Herold's position would not necessarily have thought that Dr. Bhat's statement suggested wrongdoing by the physician who prescribed the drug or wrongdoing by the drug manufacturer that manufactured and marketed the drug. Instead, a reasonable person in Herold's position might have thought that Dr. Bhat was doing no more than expressing his belief, in hindsight, that a different drug should have been used because of the unfortunate side effect that resulted from the use of OsmoPrep. As I see it, a doctor's belief in hindsight that a different drug should have been used because of an adverse side effect from the drug that *was* used would not necessarily compel a reasonable person to suspect someone had done something *wrong* in connection with the prescription of that drug.

Absent evidence that Herold *actually* suspected wrongdoing -- which Salix did not have -- I would conclude here that there is a triable issue of fact as to when the statute of limitations began to run. Accordingly, I would reverse.


          ROBIE          , J.

1