Filed 4/3/25  Roman v. Smith CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ISIDRO ROMAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>S. SMITH et al.,<br><br>Defendants and Respondents. | F085571<br><br>(Super. Ct. No. CV63312)<br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |

**BY THE COURT:**

It is ordered that the opinion filed herein on April 3, 2025, be modified to delete all matters on page 19 appearing after the citation "(Rule 8.278(a)(5).)" at the end of the Disposition.  There is no change in judgment.

SNAUFFER, J.

I CONCUR:


DE SANTOS, J.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ISIDRO ROMAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> S. SMITH et al., <br><br> Defendants and Respondents. | F085571 <br><br> (Super. Ct. No. CV63312) <br><br> **OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Isidro Roman, in propria persona, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General and LeeAnn E. Whitmore, Deputy Attorney General, for Defendants and Respondents.

-ooOoo-

---

[*]        Before Detjen, Acting P. J., Snauffer, J. and DeSantos, J.

Plaintiff Isidro Roman (Roman) appeals from a judgment after the trial court granted a motion for summary judgment brought by defendants Dr. S. Smith and Dr. J. St. Clair.  Roman, an incarcerated individual, sued defendants for medical malpractice he claimed occurred while he was in custody.  Roman alleged Dr. Smith, under Dr. St. Clair's supervision, negligently failed to order necessary pain management and MRI scans for Roman's shoulder, back, and neck.  On July 31, 2018, a day after an appointment with Dr. Smith, Roman submitted a healthcare grievance form complaining of these failures.  But Roman did not present a government claim to the Government Claims Program (GCP) until October 24, 2019.

After Roman filed his lawsuit in August 2020, he submitted a request that the trial court appoint counsel on his behalf because of his indigency and incarceration.  The court clerk returned Roman's request unfiled, stating the court does not appoint counsel in civil matters.  Later, defendants moved for summary judgment, arguing in part that Roman did not present a timely government claim.  (See Gov. Code,[1] § 911.2 [six months to present government claim after accrual of personal injury cause of action].)  The court agreed, granting defendants' summary judgment.

On appeal, Roman contends (1) he was denied meaningful access to the trial courts, and (2) the court erred in granting summary judgment.  We agree the clerk's refusal to file Roman's requests for appointment and other papers denied him meaningful access to the courts.  However, we conclude the denial was not prejudicial.  Roman's government claim was untimely, and he has no reasonable probability of defeating defendants' motion for summary judgment.

We therefore affirm.

---

[1]    Subsequent undesignated statutory references are to the Government Code.

## BACKGROUND

In February 2017, while a state prisoner and a passenger in a state correctional vehicle, Roman suffered injuries to his shoulder, back, and neck in a vehicle accident. In July 2017, Dr. Andrew Hartman performed shoulder replacement surgery on Roman. After the surgery, Roman was prescribed methadone as a pain medication. In March 2018, Roman was transferred from the Pleasant Valley State Prison to the Sierra Conservation Center State Prison, where he continued to receive medication.

*First Grievance*

On May 26, 2018, Roman submitted a form CDCR 602 HC, Health Care Grievance, requesting (1) MRI's of his back, neck and left shoulder and (2) a referral to a pain management specialist due to ongoing pain from injuries received in the vehicle accident. The grievance was assigned tracking number SCC HC 18000295. On July 2, 2018, Dr. Smith interviewed Roman about the grievance. On July 26, 2018, Dr. St. Clair signed the "Institutional Level Response," which stated that, in view of Roman's medical history, the requested MRI's were not medically indicated and "there is not a compelling need for ongoing methadone for your chronic shoulder, back, and neck pain." The response also stated Roman's case was presented to the pain management committee and on July 25, 2018, the committee decided not to change his current treatment and "[n]arcotics are not indicated at this time."

Roman appealed the institution's decision to the Health Care Correspondence and Appeals Branch, which provides headquarters' level review of healthcare grievances. The "Headquarters' Level Response" dated November 1, 2018, stated there would be no intervention, effectively denying the appeal. The response stated that in September 2018 Roman had been examined and X-rays had been taken of his lumbar spine and right shoulder, the provider did not document a medical indication for an MRI, and his medical condition would continue to be monitored and care provided as determined by the

3.

primary care provider. It also stated: "This decision exhausts your administrative remedies."

*Second Grievance*

On July 31, 2018, after the institutional response to his first grievance was issued, Roman submitted a second form CDCR 602 HC, Health Care Grievance. Section A of the form asks: "Explain the decision … that has had a material adverse effect upon your health and welfare for which you seek an administrative remedy." Roman stated, "[Denial of] medical care and acted with [disrespect], unprofessional, racial and discrimination" and "Please see attachment [¶] Citizen's Complaint." The attached "Citizen's Complaint Against Employee of the California Department of Corrections and Rehabilitation" stated, in relevant part, that "[o]n July 30, 2018, I received … a follow-up for my c[h]ronic care, back and shoulder pain, and heart[] or chest-pain. (Some capitalization omitted.) [This] complaint is against the doctor and all [supervisors] … [they] failed to provide medical care … [denied] medical care …." (Some capitalization omitted.) Roman requested that he never be seen by Dr. Smith again and that he receive medical care appropriate to his needs. The grievance was assigned tracking number SCC SC 18000020 (Grievance '020).

On August 6, 2018, Grievance '020 was stamped "received" by the prison's Health Care Grievance Office. As part of the institutional level review, Dr. St. Clair interviewed Roman on September 13, 2018. The institutional level review was completed on October 8, 2018, and the disposition marked on the grievance form was "No intervention." The formal three-page "Institutional Level Response" sent to Roman stated Grievance '020 was addressed as a healthcare staff complaint and, during the interview with Dr. St. Clair, Roman requested he (1) return to orthopedic due to his shoulder popping, (2) receive

physical therapy for his back, and (3) be given an MRI and X-ray.[2]  The response also stated Roman reported that he believed Dr. Smith thought he was faking his injuries and Dr. Smith called him a " 'F[***]ing Mexican drug addict.' "  Dr. Smith also was interviewed as part of the institutional review.  The response set forth the conclusion that staff did not violate department policy; it was signed by Dr. St. Clair and the chief executive officer of the Sierra Conservation Center.

On October 18, 2018, Roman completed section B of Grievance '020 to appeal the decision to headquarters.  Roman wrote he was dissatisfied because he had not "received [his] 'PT' [phy]sical therapy and [his] 'MRI' " or "the pain management which [he had complained about] on his medical request …."
On January 16, 2019, a headquarters' level response was issued stating the review of Grievance '020 had been completed.  The disposition was "No intervention."  The response stated:  "While you may not agree with the decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your [healthcare] needs. [¶]  This decision exhausts your administrative remedies."

*Government Claim*

In October 2019, Roman presented a government claim against Dr. Smith and Dr. St. Clair based on Dr. Smith's July 2018 conduct to the GCP.  After the exchange of correspondence regarding the filing fee and missing information, the GCP sent Roman a final denial letter dated June 3, 2020.  The letter stated staff had determined his claim had accrued on July 30, 2018, and the GCP had no jurisdiction to consider that claim because it "was presented more than one year beyond the date damages accrued."   The letter cited section 911.2.

---

[2]     Two weeks after the interview, on September 27, 2018, two X-rays were taken of Roman's right shoulder and two X-rays were taken of his lumbar spine.

*Complaint*

Two months later, in August 2020, Roman filed a complaint stating causes of action for general negligence and intentional torts based on allegations of medical malpractice. The trial court granted defendants' motion to strike Roman's request for punitive damages and sustained defendants' demurrer as to some of Roman's causes of action. In February 2021, Roman filed a first amended complaint, which is the operative pleading in this appeal. The court sustained another demurrer as to Roman's intentional tort causes of action, leaving only Roman's causes of action for ordinary negligence.

We summarize the pertinent allegations in Roman's first amended complaint. In July 2018, Dr. Smith discontinued Roman's pain medication. Roman alleges that Dr. Smith failed to follow "the recommended step-down process, or gradual lowering of the [dose] until stopping."

Roman alleges that on July 24, 2019, he discovered that, due to Dr. Hartman's general negligence, the ligaments were not connected or reconnected properly during his shoulder surgery and a replacement part was not functioning properly. As a result, Roman "had to endure severe pain and suffering, and limited shoulder mobility." Roman alleged his discovery of the failure of this shoulder replacement and the verification of his pain was delayed because Dr. Smith failed to order X-rays and MRI scans that Roman had requested. Roman also alleged that Dr. St. Clair, as the Chief Medical Officer for Sierra Conservation Center State Prison, was responsible for Dr. Smith's performance, and is thus liable for Dr. Smith's negligence. Roman alleged that, as a result of the negligence, he would endure at least one corrective surgery, require pain management, and suffer further damages. The attachments to the first amended complaint included documents relating to two healthcare grievances pursued by Roman and some of his medical records.

*Request for Appointment of Counsel and a Medical Expert*

Roman attempted to file multiple requests for the appointment of counsel, the first as early as December 2021, and at least one request for the appointment of a medical expert. (See Evid. Code, § 730 [trial court appointment of experts].) The clerk sent Roman a notice dated December 30, 2021, stating the request for appointment of counsel was "being returned to [him] unprocessed" because "[t]he court does not appoint or provide counsel for Civil Case type filings."

Roman also requested the trial court order the court clerk to accept his filings and to "take action and assist plaintiff in accord[ance] with court rule in his civil action." (Some capitalization omitted.) Though we do not have the full text of Roman's motion in our record, it is clear that, due to repeated denials of his filings for formatting errors, Roman asked the court to intervene and order the clerk to file his motions. With sad irony, the court clerk refused to file Roman's request due to formatting issues.

*Motion for Summary Judgment*

In September 2022, defendants moved for summary judgment. Defendants requested summary judgment on two grounds: (1) Roman's causes of action were legally barred because he failed to file a government claim pursuant to section 911.2's statute of limitations, and (2) defendants' conduct fell within the applicable medical standard of care.

In support of defendants' separate statement of undisputed facts, defendants submitted Roman's deposition testimony, Grievance '020, the July 31, 2018 citizen's complaint, declarations of Dr. Smith and Dr. St. Clair, the October 2019 government claim form submitted by Roman, the denial of that claim by the GCP, and other documents.

Defendants' separate statement of undisputed facts addressed Roman's discovery of the negligence alleged in his complaint by asserting Roman repeatedly threatened legal action against Dr. Smith during a July 30, 2018 visit with Dr. Smith and, thus, as of that

date, Roman believed Dr. Smith had not provided proper medical treatment. Defendants' separate statement of undisputed facts also asserted (1) Roman documented his complaints against Dr. Smith and Dr. St. Clair in his citizen's complaint and Grievance '020 dated July 31, 2018; (2) Dr. Smith had not treated Roman since July 30, 2018; and (3) Roman's government claim was based on his visits to Dr. Smith in July 2018.

Roman did not oppose the motion for summary judgment or respond to defendant's separate statement of undisputed facts. He did, however, attempt to file an ex parte request for appoint of counsel and a medical expert and a motion for a continuance of the November 28, 2022 hearing on the summary judgment motion. The clerk rejected these documents.

Defendants submitted a reply noting Roman's failure to oppose the motion. Defendants argued, pertinent to this appeal, that no triable issue of fact existed as to Roman's failure to file a timely government claim under section 911.2.

In November 2022, receiving no oral argument, the trial court granted defendants' motion for summary judgment. The court determined (1) Roman failed to present a timely government claim as required by section 911.2 and (2) defendants had successfully negated the breach and causation elements of Roman's negligence cause of action.

In December 2022, the trial court filed judgment in defendants' favor. Roman timely appealed.

## DISCUSSION

### I. FORFEITURE OF ARGUMENTS

Roman argues that the trial court denied him access to the court in violation of his federal constitutional and state rights. Specifically, the court clerk improperly refused to file various papers Roman submitted, including a request to appoint counsel and an

expert on his behalf. He also contends a racial and discriminatory motive animated this conduct.

Defendants do not address these arguments on appeal. Rather, defendants argue that we should dismiss Roman's arguments due to procedural deficiencies, i.e., Roman's failure to provide citations to the record, and appropriate legal argument, and failure to acknowledge the proper standard of review.

But defendants ignore whether to deem arguments on appeal forfeited for such procedural deficiencies falls within our discretion. (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1246.) We decline to ignore Roman's arguments. During our review of the record, the court became familiar with the limited documents pertinent to Roman's claims. Given we find their content troubling, we decline to deem the deficiencies in Roman's brief on appeal a waiver or forfeiture of his related arguments.

## II. RIGHT OF ACCESS TO THE COURTS

### A. Basic Principles

To cognizably claim a denial of the federal constitutional right of access to the trial courts, an incarcerated person must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."[3] (*Lewis v. Casey* (1996) 518 U.S. 343, 346, 353, fn. omitted.) In addition, incarcerated persons in California have a statutory right "[t]o initiate civil actions" as plaintiffs. (Pen. Code, § 2601, subd. (d).) This provision has been interpreted " 'to include within its scope the right to be afforded meaningful access to the courts to *prosecute* those civil actions.' " (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 465 (*Smith*) [Fifth Dist.], quoting *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483 [First Dist.]; accord, *Crane v. Dolihite* (2021) 70 Cal.App.5th 772, 788 (*Crane*)

---

[3] Given we conclude that Roman's negligence claims are undisputedly barred by his failure to comply with section 911.2's timing requirements, neither the statute nor the California or federal constitutions provide a basis for relief.

[Fifth Dist.]; *Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 413 [Third Dist.]; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792 [Second Dist].)

In *Smith*, an indigent inmate pursuing a medical malpractice claim filed an ex parte motion for appointment of counsel. (*Smith*, *supra*, 38 Cal.App.5th at p. 461.) The trial court issued an order stating it had received the motion and it lacked authority to appoint counsel for a plaintiff in a civil proceeding. The court denied the motion. (*Ibid*.) We reversed, concluding the court was not aware of its discretionary authority derived from Penal Code section 2601, subdivision (d) and the constitutional protections given over indigent inmates' right of access to the court and, thus, committed a legal error in concluding it lack the authority to appoint counsel. (*Smith*, at pp. 474–475.) We remanded the case to the court to make an informed exercise of its discretionary authority in accordance with established case law. (*Id*. at p. 477.)

To state a violation of this statutory right to prosecute a civil action, an incarcerated person must show "(1) official acts frustrating the litigation, and (2) an actual injury that satisfies the standard used in civil case for a miscarriage of justice. To demonstrate actual injury, the prisoner must show the loss or impairment of a nonfrivolous cause of action. [Citation.] Such a showing entails describing the cause of action well enough to apply the nonfrivolous requirement and determine the cause of action is more than a hope. [Citation.] In addition, to establish a miscarriage of justice, the prisoner must show it is reasonably probable that a result more favorable to him or her would have been reached in the absence of the denial of access." (*Crane*, *supra*, 70 Cal.App.5th at p. 788.)

B.    Official Acts Frustrating the Litigation

We first address whether official acts frustrated Roman's pursuit of the lawsuit against defendants. We conclude that the superior court clerk's rejection of Roman's

10.

request for appointment of counsel and a court appointed expert was an improper official act that frustrated Roman's prosecution of his lawsuit.

We start by reviewing the duties of a trial court clerk. "Government Code section 69846.5 provides that '[t]he clerk of the superior court shall endorse on each paper filed with the court the day, month, and year it is filed.' " (*Carlson v. Department of Fish & Game* (1998) 68 Cal.App.4th 1268, 1273.) "[A] paper is deemed filed when it is deposited with the clerk with directions to file the paper." (*Rojas v. Cutsforth* (1998) 67 Cal.App.4th 774, 778.)

"The functions of the clerk are purely ministerial." (*Rojas v. Cutsforth*, *supra*, 67 Cal.App.4th at p. 777.) Whether a document presented for filing "has legal merit is a determination to be made by a judge, not the clerk's office." (*Voit v. Superior Court* (2011) 201 Cal.App.4th 1285, 1287.) Thus, for example, a "clerk has no discretion to reject a complaint that substantially conforms to the local rules." (*Rojas*, at p. 777.) Instead, "[w]here … the defect, if any, is insubstantial, the clerk should file [the pleading] and notify the attorney or party that the perceived defect should be corrected at the earliest opportunity." (*Ibid*.)

The clerk improperly rejected and returned Roman's December 2021 request for the appointment of counsel. The clerk's rationale for rejecting the request—"[t]he court does not appoint or provide counsel for Civil Case type filings"—is contrary to the established rules of law governing the appointment of counsel for indigent inmates prosecuting a civil action.

In such cases, a superior court *may* provide counsel for indigent, incarcerated litigants. (*Crane*, *supra*, 70 Cal.App.5th at p. 788; *Smith*, *supra*, 38 Cal.App.5th at p. 465.) The clerk exceeded her ministerial function and, in effect, determined the legal merit of Roman's request. This may have occurred because (1) the clerk mistakenly believed the court lacked the authority to appoint counsel in civil cases or (2) the clerk applied a judge made policy of the superior court. Whatever the reason, the clerk's

11.

refusal to accept Roman's filing was contrary to established law. (See *Smith*, at p. 468.) In *Smith*, we concluded "that trial courts evaluating a request for the appointment of counsel by an indigent plaintiff *must* (1) recognize their discretionary authority to appoint counsel or implement other measures to afford the plaintiff meaningful access to the courts and (2) exercise that discretion in an informed manner." (*Id*. at p. 476, italics added.) Here, Roman was never afforded the opportunity to have his request for counsel evaluated and ruled upon by a superior court judge, which fundamentally impaired his prosecution of this case.

The clerk also improperly rejected Roman's request that the trial court order the clerk to accept his papers and "take action and assist plaintiff in accord[ance] with court rule in his civil action." (Some capitalization omitted.) As a general rule, "the clerk must not accept for filing or file any papers that do not comply with the rules" for formatting in the California Rules of Court.[4] (Rule 2.118(a); see rules 2.100–2.119.) An exception provides: "For good cause shown, *the court may* permit the filing of papers that do not comply with the rules" for formatting in the California Rules of Court. (Rule 2.118(c), italics added.) The plain language of this provision demonstrates the superior court, not the clerk, is authorized to apply the exception. By rejecting Roman's request for an order, the clerk usurped the court's authority and deprived Roman of his right to have the court determine whether to apply the exception. Given the "important policies favoring unfettered access to the courts" (*Lubetzky v. State Bar* (1991) 54 Cal.3d 308, 317), it was improper for the clerk to reject Roman's request to file papers containing only minor formatting errors. Rather, the clerk should have filed the request for the court to consider and decide.

To summarize, the clerk improperly denied Roman the opportunity to present his request for counsel and a medical expert, and to file his various requests despite, in our

---

[4]    Further rule references will be to the California Rules of Court.

view, minor formatting errors.[5] We find as a matter of law that the clerk's conduct frustrated Roman's ability to prosecute his lawsuit.

### C.    Actual Injury

We next address whether Roman suffered actual injury from the clerk's improper rejection of his papers. We analyze this requirement under the harmless error test (see *Crane*, *supra*, 70 Cal.App.5th at p. 789) and consider whether there was a reasonable probability of a more favorable result absent the improper conduct. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574; Code Civ. Proc., § 475.)

Initially, we clarify the "result" at issue. Defendants obtained a favorable judgment by prevailing on their motion for summary judgment. Thus, a more favorable result for Roman would be an order denying the motion for summary judgment. Consequently, we consider whether there is a reasonable probability that Roman could have (1) obtained the appointment of counsel, an expert, or both and (2) defeated defendants' motion for summary judgment with their aid.

To justify the appointment of counsel or other relief, an incarcerated person must satisfy a three-step inquiry: (1) "whether the prisoner is indigent," (2) "whether the lawsuit involves a bona fide threat (or seeks relief for a bona fide injury) to the prisoner's personal or property interests[,]" and (3) "if the first two conditions are met, the court considers what measures are available to protect the prisoner's right of meaningful access to the courts." (*Crane*, *supra*, 70 Cal.App.5th at p. 783.)

First, as to Roman's indigent status, we granted Roman's application for waiver of trial court fees and costs. The information in Roman's application shows he qualifies as

---

[5]    We determine that the clerk properly rejected Roman's postjudgment filings. Once judgment entered, the trial court was divested of jurisdiction to hear Roman's postjudgment motions. (*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479 [entry of judgment terminates "a trial court's jurisdiction to rule on the merits of [the] case, apart from ruling on a new trial motion, a motion to vacate the judgment or a similar motion"].)

indigent for purposes of obtaining a discretionary measure to protect his right of access to the courts.

Second, as we explain below, Roman cannot satisfy the requirement that his lawsuit presents a bona fide claim for relief. Rather, the undisputed facts show he failed to comply with the claim presentation requirements of the Government Claims Act, which bars his causes of action. The existence of this bar means he did not suffer an actual injury due to the clerk's improper rejection of his papers. Thus, he has not established a violation of his statutory or constitutional rights to prosecute a civil action that warrants reversal of the judgment.

1.  *Accrual of the Malpractice Claim*

Generally, when a cause of action falls within the scope of the Government Claims Act, submission of a claim is a condition precedent to maintaining a tort action and, thus, compliance is treated as an essential element of the cause of action. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239–1240.) In addition to exhausting the administrative grievance process, prisoners have an independent "obligation to comply with the Government Claims Act." (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1382.) A claim falls within the Government Claims Act's scope, generally and relevant here, if the plaintiff seeks money damages against public entities and public employees acting within the scope of their employment. (See §§ 905, 950.2.)

Here, there is no dispute that Roman's claim for medical negligence is subject to the claim presentation requirements of the Government Claims Act. Consequently, we consider when the medical malpractice cause of action set forth in his government claim and first amended complaint accrued.

For purposes of the Government Claims Act, a cause of action accrues on the same date a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the relevant statute of limitations. (§ 901; *Rubenstein v. Doe No. 1* (2017) 3

14.

Cal.5th 903, 906.) Traditionally, a claim accrues " ' "when [it] is complete with all of its elements"–those elements being wrongdoing, harm, and causation.' " (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191; accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815.) "This is [known as] the 'last element' accrual rule …." (*Aryeh*, at p. 1191.)

Code of Civil Procedure section 340.5 governs the time within which a plaintiff must bring a medical malpractice claim.[6] "[T]he statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing …." (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1110; see *Norgart v. Upjohn Co*. (1999) 21 Cal.4th 383, 397–398.) "This rule sets forth two alternate tests for triggering the limitations period:  (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing. [Citation.]  The first to occur under these two tests begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

"[T]he term 'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent cause." ' [Citations.]  Thus, once a patient knows, or by reasonable diligence should have known, that he has been harmed through professional negligence, he has one year to bring his suit." (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896 (*Gutierrez*).)  " '[W]hen the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge* from

---

**6**    Code of Civil Procedure section 340.5 provides in relevant part:  "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  The length of the limitations is not at issue in this case.  We are merely concerned with the standards governing accrual of a claim under Code of Civil Procedure section 340.5 for purposes of the Government Claims Act.

15.

sources open to his investigation … the statute commences to run.' " (*Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 101.)

Put differently, section 340.5's one-year period is only triggered once " 'the patient's "reasonably founded suspicions [have been aroused]," and she has actually "become alerted to the necessity for investigation and pursuit of her remedies[ ]" ….' " (*Artal v. Allen* (2003) 111 Cal.App.4th 273, 279; see also *Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 405, fn. 5.) Discovery occurs when the plaintiff suspects a factual basis for a claim's element, i.e., when the plaintiff has information prompting a reasonable person to inquire about the claim, not when the accuracy or validity of suspicions is confirmed or sufficient information to succeed on the claim is acquired. (See, e.g., *Norgart*, at pp. 397–398, & fn. 3; *Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at pp. 1110–1111; *Gutierrez*, *supra*, 39 Cal.3d at pp. 896–898.)

### 2. *Discovery of the Claim*

Based on the foregoing principles, we consider when Roman actually suspected he was experiencing an injury caused by Dr. Smith's wrongdoing. Roman alleges two instances of misconduct forming the basis for his claims: Dr. Smith's order to cease providing Roman's pain medication, despite Roman's complaints of pain, which did not follow the recommended "step-down process," and Dr. Smith's failure to order a "X-ray, 3D, or MRI scans as requested by [Roman]." Roman alleges delayed discovery of the in fact cause of his shoulder pain, i.e., the faulty replacement.

Grievance '020 indicated Roman saw Dr. Smith for "c[h]ronic care, back and shoulder pain, and heart[] and chest-pain." Roman stated that he did not receive the medical care he needed, including the "MRI" or "pain management" that he requested. (Some capitalization omitted.) Roman authenticated Grievance '020 at his deposition.

The authenticated grievance establishes that on July 30, 2018, Roman knew he was experiencing pain, suspected his suffering was unnecessary because the pain could

16.

be reduced with proper medication, and suspected Dr. Smith negligently denied him the requested medication. (See *Gutierrez*, *supra*, 39 Cal.3d at p. 896.) Roman's discovery of the negligent conduct and his injury was not, as Roman's complaint contends, the discovery of the faulty shoulder replacement. Roman alleged that Dr. Hartman, not Dr. Smith, performed the faulty replacement, which Roman states he did not discover until July 24, 2019.

Rather, Roman's discovery of the negligent conduct was Dr. Smith's decision to not order the MRI scans and to address Roman's pain management needs. Because Roman's injury was his then ongoing pain, he was aware of the injury in July 2018. He was also simultaneously aware of the cause: Dr. Smith's denial of Roman's requested treatment. Roman's belief as to what constituted proper care was not contingent upon his discovery of the in fact cause of his pain, i.e., the faulty shoulder replacement, but what medical treatment he believed Dr. Smith should have ordered. The fact Roman filed a grievance demonstrates he actually suspected Dr. Smith had breached the applicable standard of care by failing to order MRI scans and prescribe proper pain medication.

We recognize a plaintiff's discovery of a medical malpractice claim may be delayed by the ongoing doctor-patient relationship in certain circumstances. (See *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 436 [triable issue of fact as to the plaintiff's delayed filing of suit based on justifiable reliance on her doctor's repeated reassurance that her condition would eventually heal].) Here, Roman effectively terminated the doctor-patient relationship on July 31, 2018, when he requested a new provider in his citizen's complaint about Dr. Smith, which was attached to Grievance '020. (See e.g., *Kilburn v. Pineda* (1982) 137 Cal.App.3d 1046, 1048 [patient "discharged" doctor after believing that doctor committed malpractice]; *Hirschman v. Saxon* (1966) 246 Cal.App.2d 589, 592 [doctor-patient relationship terminated when patient "failed to keep his scheduled appointment … and never thereafter returned for further treatment"].)

There is no reasonable probability Roman could rebut the fact of his discovery if he were provided counsel and was granted another opportunity to oppose the motion for summary judgment. At his deposition, Roman authenticated Grievance '020 and admitted that he filed it because he believed Dr. Smith, under Dr. St. Clair's supervision, failed to provide him adequate care. A trial court may conclude that a plaintiff's clear, unequivocal admission of a material fact in his deposition testimony means " 'there is no substantial evidence of the existence of a triable issue of fact.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21, italics omitted; accord, *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 861.) Roman could only submit a self-serving declaration contradicting his deposition testimony and the authenticated contents of the complaint and grievance forms. But a self-serving declaration is insufficient to create triable issues of fact. (*Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1090.)

Based on the July 31, 2018 accrual date and Roman's presentation of his government claim on October 24, 2019, we conclude Roman cannot demonstrate compliance with the Government Claims Act's claim presentation requirement, which is an essential element to his causes of action. The undisputed facts establish his government claim was not presented within six months of accrual as required by section 911.2, subdivision (a). (See *Judicial Council of California v. Superior Court* (2014) 229 Cal.App.4th 1083, 1091.) Further, if the claim is interpreted as a written application to present a late claim, the application was not made with one year of accrual as required by section 911.4, subdivision (b).[7] Because the GCP has no discretion to consider a claim presented after the one-year period has expired, Roman does not have a reasonable probability of defeating defendants' motion for summary judgment even with

---

[7] An application for leave to present a late claim shall be presented "within a reasonable time not to exceed one year after the accrual of the cause of action[.]" (§ 911.4, subd. (b).)

18.

the aid of appointed counsel and a medical expert.  Consequently, the denial of Roman's right to meaningful access to the trial courts was not prejudicial.

## DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Rule 8.278(a)(5).)


<u>*Recommendations*</u>

*Oral Argument:*  Send a neutral letter.

*Publication*:  No.